UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARJAN DANESHVARKASHKOOLI, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Case No. 23-1225 (RJL)<br>) |
| ANTONY BLINKEN, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(March 25, 2024) [Dkt. #8]

Plaintiffs Pouria Kharazi, Ehsan Ghaffari, Saeed S. Farsangi, Sina Kianpour, Taha Yasini, and Zeinab Soleimani (collectively, "plaintiffs")[1] bring this action against numerous federal officials ("defendants"), seeking to compel the U.S. government to adjudicate their nonimmigrant visa applications. Plaintiffs are Iranian nationals who wish to travel to the United States to pursue doctoral and master's degrees, and they allege that defendants' failure to issue a final decision on their visa applications after they have been pending for 17 months or more constitutes an "unreasonable delay" warranting relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701, *et seq.* Defendants have moved to dismiss. For the following reasons, defendants' Motion to Dismiss will be GRANTED.

---

[1] Two additional plaintiffs, Marjan Daneshvarkashkooli and Mohsen Saberi, voluntarily dismissed their claims in September 2023 after their visa applications were approved. *See* Notice of Partial Dismissal [Dkt. #11].

I.   **BACKGROUND**

   *a. Statutory and Regulatory Background*

The F-1 visa is a nonimmigrant "Academic Student" visa that allows a foreign citizen to travel to the United States as a full-time student in an accredited educational program. *See* U.S. Citizenship and Immigr. Servs., Students and Employment, https://perma.cc/7ZT7-KYWA; 8 U.S.C. § 1101(a)(15)(F). To obtain an F-1 visa, an applicant must complete an in-person interview with a consular officer. *See* 8 U.S.C. § 1202(h). After a noncitizen has "properly completed and executed" a "visa application," including the required interview, a "consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). Relevant here, Congress has mandated that any noncitizen that is a national of a country determined by the Secretary of State to be a state sponsor of international terrorism shall not be issued a nonimmigrant visa "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Since January 19, 1984, the Secretary of State has designated Iran a "state sponsor of international terrorism." *See* U.S. Dep't of State, State Sponsors of Terrorism, https://perma.cc/9DHR-BQEG.

   *b. Factual Background*

Plaintiffs are six Iranian nationals who applied for F-1 nonimmigrant visas to pursue doctoral and master's degrees in the United States. *See* Am. Compl. for Declaratory and Injunctive Relief [Dkt. #7] ("Am. Compl."), Exs. B–G. All six plaintiffs

2

submitted their DS-160 application forms and subsequently completed the required consular interviews at the U.S. Consulate in Dubai, United Arab Emirates ("U.A.E."), between March 28, 2022 and October 25, 2022. Am. Compl. ¶¶ 1–4. Because they are Iranian nationals, all six plaintiffs were notified at the conclusion of their interviews that their visa applications had been denied under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), and additional documentation was required. Am. Compl., Exs. B–H. Plaintiffs provided the additional requested documentation, but their applications have remained in "administrative processing" for a period ranging from 17 to 24 months. *Id.* Believing that the processing of their visas has been unreasonably delayed, plaintiffs brought this action under the APA against nine officials from the Departments of State, Justice, and Homeland Security. Am. Compl. ¶¶ 21–29. Plaintiffs allege that the delay in processing of their applications has caused them various hardships, including financial hardship due to their inability to plan and the threatened loss of their admission to graduate degree programs in the United States. Am. Compl. ¶¶ 13, 55; Exs. B–G. Plaintiffs seek declaratory and injunctive relief. *Id.* at 13.

Defendants moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). *See* Defs.' Second Mot. to Dismiss [Dkt. #8] ("Defs.' Mot."). Plaintiffs filed a response in opposition to the motion to dismiss. Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [Dkt. #10]. Defendants filed a reply in further support of their motion to dismiss, and the motion is now ripe for review. *See* Reply in Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply") [Dkt. #12].

## II. LEGAL STANDARD

When a defendant moves to dismiss under Rule 12(b)(1), the Court must "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). Under Rule 12(b)(1), plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). Conversely, to survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). That is, the complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570. When analyzing a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in plaintiffs' favor. *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 (D.D.C. 2022).

## III. ANALYSIS

### a. The Court Has Subject Matter Jurisdiction

Defendants put forward several arguments challenging the Court's subject matter jurisdiction. However, these arguments have already been considered and rejected by numerous courts in this district. First, defendants argue that plaintiffs lack standing as unadmitted, non-resident non-citizens. *See* Defs.' Mot. at 7–14. Although it is true that unadmitted non-residents lack standing to challenge *decisions* associated with their visa applications, *see, e.g., Polyzopoulos v. Garland*, No. 20-cv-804, 2021 WL 1405883, at *7

4

(D.D.C. Apr. 14, 2021), "unadmitted non-residents do have standing to challenge *delays* in the processing of their visa applications." *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *4 (D.D.C. Oct. 23, 2023). Because plaintiffs are not alleging that they have a right to obtain F-1 visas, but rather that they have a right to a final decision on their visa applications, plaintiffs have standing. *See Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).[2]

Next, defendants contend that consular non-reviewability precludes the Court from reviewing plaintiffs' claim. Defs.' Mot. at 25–29. The doctrine of consular non-reviewability "holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999); *see also Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). However, "a long line of decisions from [courts in this district] have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022); *see also Pourshakouri v. Pompeo*, No. 20-cv-402, 2021 WL 3552199, at *5 n.4 (D.D.C. Aug. 11, 2021). Here, each plaintiff's application was denied under 8 U.S.C. § 1201(g). *See* Am. Compl., Exs.

---

[2] Defendants also argue that certain defendants named in the amended complaint should be dismissed because they have no role in adjudicating the visa applications at issue and therefore plaintiffs lack standing with respect to those defendants. *See* Defs.' Mot. at 22–24. Because plaintiffs have standing with respect to at least some of the defendants—*i.e.,* those associated with the U.S. Consulate in Dubai—and the Court ultimately dismisses plaintiffs' claim under Rule 12(b)(6), the Court declines to address this argument.

B–G; *see also Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *1 (D.D.C. Jan. 17, 2023) (explaining that under § 1201(g), "an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility"). Upon denial, plaintiffs were informed that their applications were subject to "administrative processing" and they were asked to provide additional information. *See* Am. Compl. ¶¶ 34–35; Exs. B–H. Further, the U.S. Consulate in Dubai has retained plaintiffs' passports. *Id.* ¶ 36. The denial was therefore provisional, and the consular non-reviewability doctrine does not apply.

    Defendants also argue that as non-resident non-citizens, plaintiffs cannot challenge a condition of entry—that is, eligibility under 8 U.S.C. § 1735(a), which requires a determination of whether a visa applicant poses a threat to the safety or national security of the United States—because it is a non-justiciable question. *See* Defs.' Mot. at 20–22. However, defendants' argument is again based on the incorrect premise that there has been a determination made about any of the plaintiffs under § 1735. Other courts in this district have found that where applications are pending administrative processing, even if such processing was triggered by § 1735, the "review of their applications is not complete." *Khazaei*, 2023 WL 6065095, at *4; *see also Fakhimi*, 2023 WL 6976073, at *5. "To the extent that the reason for the delay is to allow the Secretary to determine whether each [p]laintiff 'does not pose a threat to the safety or national security of the United States,' as required under Section 1735 before a visa can issue, [p]laintiffs' unreasonable-delay claims are still justiciable." *Khazaei*, 2023 WL 6065095, at *5.

6

Finally, defendants argue that plaintiffs' unreasonable delay claim fails because the law provides no clear, non-discretionary duty for defendants to adjudicate any specific visa application. Defs.' Mot. at 14–18. The APA provides relief for an agency's failure to act by authorizing the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). As other courts in this district have held, "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action." *Khazaei*, 2023 WL 6065095, at *6. Further, taking such action is required by both the APA and the State Department's own regulations, which require that a consular officer "must . . . properly and promptly" process a visa application, and either "issue" or "refuse" a completed visa application. 22 C.F.R. §§ 41.106, 41.121(a); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"). "It follows, then, that an alleged failure to complete those steps [of processing a visa application] within a reasonable time . . . is reviewable under the APA." *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1246025, at *7 (D.D.C. Mar. 24, 2021); *see also Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020).

The Court therefore has subject matter jurisdiction to address plaintiffs' unreasonable delay claim.

b. Plaintiffs Fail to State a Claim of Unreasonable Delay

Plaintiffs allege that defendants have unreasonably delayed the adjudication of their applications for F-1 visas, which have remained in administrative processing for a period ranging from 17 to 24 months. *See* Am. Compl. ¶¶ 1, 4. Defendants respond that any delay in processing plaintiffs' applications is not yet unreasonable and therefore plaintiffs have failed to state a claim. *See* Defs.' Mot. at 29–37.

To evaluate the reasonableness of agency delay, courts in this Circuit examine six factors set out in *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020) (quoting *TRAC*, 750 F.2d at 80) (internal citations and quotation marks omitted). At the motion-to-dismiss stage, "courts in this [d]istrict have regularly held that it is appropriate to evaluate the *TRAC* factors when determining if a plaintiff's complaint has stated sufficient facts to plead a plausible claim of unreasonable delay in the immigration context." *Patel v. USCIS*, No. 22-cv-1931, 2023 WL 5833688, at *2 (D.D.C. Sept. 8, 2023).

1.  *TRAC* Factors 1 and 2

The first two factors are often considered together, *see, e.g., Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), and the first *TRAC* factor is considered the "most important" of the six, *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

To support their argument that Congress has mandated an applicable timeline, plaintiffs point to 8 U.S.C. § 1571(b), which states that "[i]t is the sense of Congress . . . that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." *See* Pls.' Opp'n at 7. However, this language is "aspirational, rather than mandatory," *Shen*, 2021 WL 1246025, at *8, and it is also not clear that it applies to the application processing at issue here. *See Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *2 n.2 (D.D.C. Feb. 16, 2022); *El Centro Reg'l Med. Ctr. v. Blinken*, No. 21-cv-361, 2021 WL 3141205, at *4 & n.2 (S.D. Cal. July 26, 2021) (determining that § 1571 applies to the processing of immigrant benefit applications by USCIS, not consular officials at the State Department). "Accordingly, § 1571(b) cannot here carry the weight that plaintiff[s] would like it to shoulder." *Arab*, 600 F. Supp. 3d at 70.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "[D]istrict courts have

9

generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (quoting *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)). Here, plaintiffs have been waiting approximately 17 to 24 months. This delay is reasonable under the circumstances and by comparison to similar student-visa cases. *See, e.g., Shen*, 2021 WL 1246025, at *8 (holding that a 21-month delay in the adjudication of an F-1 student visa was not unreasonable); *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (holding that a 21-month delay in the adjudication of a J-1 visa was not unreasonable). The reasonableness of this delay is further informed by the applicability of 8 U.S.C. § 1735(a), which requires the Secretary of State to make a finding that each plaintiff "does not pose a threat to the safety or national security of the United States" before issuing them visas. Accordingly, the first two *TRAC* factors favor defendants.

      2.    *TRAC* Factor 4

The fourth factor considers the effect that a ruling in plaintiffs' favor would have on the agency's competing priorities. "Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[ ] all others back one space.'" *Ahmadi*, 2024 WL 551542, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)).

This factor also favors defendants. Plaintiffs argue that the adjudication of F-1 visas "should take very little Consular Officer time" and they also allege that defendants "are not prioritizing F visa applications for Iranians like they are doing for other visa

applicants." Pls.' Opp'n at 8. However, consular "[p]rocessing capacity is presently a zero-sum game," so expediting review of plaintiffs' applications "would necessarily mean additional delays for other applicants." *Murway*, 2022 WL 493082, at *4 (quoting *Khan v. Blinken*, No. 21-cv-1683, 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021)). Further, even if true that defendants have opted to prioritize visas from some countries over others, plaintiffs do not allege that defendants have "singled [them] out for mistreatment." *In re Barr Lab'ys, Inc.*, 930 F.2d at 75. "In such a situation, the Court 'ha[s] no basis for reordering agency priorities,' in light of the Government's 'unique— and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" *Murway*, 2022 WL 493082, at *4 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d at 76).

### 3. *TRAC* Factors 3 and 5

The third and fifth factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiffs assert that they "have been accepted into prestigious universities and research institutions, and will contribute to the human health and welfare of the U.S. population." Pls.' Opp'n at 10. They argue that they themselves are prejudiced by the delay as they may lose the graduate positions that they have been offered, and the U.S. institutions that are relying on them to conduct research and serve as teaching assistants are also harmed by the delay. *Id.* Although the Court is sympathetic to plaintiffs' position, these interests are no different than those of any other foreign national with an

11

F-1 visa application pending who is currently in the queue in front of plaintiffs. These factors are therefore at best neutral for plaintiffs.

### 4. *TRAC* Factor 6

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi*, 2023 WL 6976073, at *11 (quoting *Gona v. USCIS*, No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021)). This factor favors neither party. Plaintiffs allege no facts amounting to bad faith, and they appear to concede that this *TRAC* factor is neutral. *See* Pls.' Opp'n at 12. As *TRAC* directs, the lack of allegations of impropriety does not weigh against plaintiffs, and therefore does not alter the Court's analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Second Motion to Dismiss is GRANTED pursuant to Rule 12(b)(6). An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge